# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **LORI K. CONRAD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:13-cv-0097** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,[1]** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 13.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should therefore be substituted for Commissioner Michael J. Astrue as the Defendant in this action. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

# I.  INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on October 26, 2009, alleging that she had been disabled since October 10, 2007, due to "L4-L5 subluxation." *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 104, 122.  Plaintiff's application was denied both initially (TR 48) and upon reconsideration (TR 49).  Plaintiff subsequently requested (TR 61) and received (TR 74) a hearing.  Plaintiff's hearing was conducted on August 15, 2011, by Administrative Law Judge ("ALJ") David Ettinger.  TR 26.  Plaintiff and vocational expert ("VE"), Melissa Neel, appeared and testified.  *Id.*

On September 22, 2011, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 20.  Specifically, the ALJ made the following findings of fact:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since October 10, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: L4-5 subluxation and asthma (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she must use a cane when walking; must be able to alternate sitting and standing every hour; cannot climb ladders or crawl; cannot more than occasionally climb

2

stairs, balance, stoop, kneel, or crouch; cannot work in hazardous environments; and must avoid concentrated exposure to temperature extremes, vibration, and respiratory irritants.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 22, 1966 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 10, 2007, through the date of this decision (20 CFR 404.1520(g)).

TR 14-20.

On November 21, 2011, Plaintiff timely filed a request for review of the hearing decision.

TR 7. On December 11, 2012, the Appeals Council issued a letter declining to review the case

(TR 1), thereby rendering the decision of the ALJ the final decision of the Commissioner. This

civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the

Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence

4

supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial
> gainful activity, benefits are automatically denied.

5

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

6

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) not giving proper weight to Dr. Dozier's opinion; (2) failing to include a function-by-function assessment in his RFC assessment; and (3) improperly evaluating Plaintiff's credibility. Docket No. 12-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record

7

adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Weight Accorded to Opinion of Plaintiff's Treating Physician

Plaintiff maintains that the ALJ erred by not giving controlling weight to the opinion of Plaintiff's treating physician, Dr. Damon Dozier. Docket No. 12-1. Specifically, Plaintiff argues that the opinions on the Medical Source Statement forms Dr. Dozier completed in March 2010 and April 2011 were supported by his records and demonstrated that Plaintiff's conditions persisted for more than 12 months, and that accordingly, pursuant to SSR 96-2p, they should have been given controlling weight. *Id.* Plaintiff further contends that the ALJ did not comply with the requirements of 20 C.F.R. §404.1527(d) in determining what weight to accord to Dr. Dozier's opinions. Plaintiff maintains that the ALJ's statement that Dr. Dozier's opinions "'are inconsistent with the claimant's limited course of treatment with no hospital admissions, no surgery, and no significantly abnormal imaging findings,'" did not constitute a "good reason" for discounting his opinion. *Id.* at 9. Plaintiff argues that, because the ALJ failed to provide the required "good reasons" for rejecting the limitations assigned by Dr. Dozier, his decision is flawed. Docket No. 12-1.

Defendant responds that the ALJ properly evaluated Dr. Dozier's opinions. Docket No. 13. Defendant maintains that the ALJ specifically stated that he did not give controlling weight to all of Dr. Dozier's opinions as expressed in the medical source statement forms from March 2010 and April 2011 because his opinions were "inconsistent with the claimant's limited course of treatment with no hospital admissions, no surgery, and no significantly abnormal imaging findings." *Id.* at 15. With regard to the imaging evidence contradicting Dr. Dozier's opinions,

8

Defendant argues that, while an MRI of Plaintiff's lumbar spine done in March 2008 showed that an L4-5 disc bulge was touching an L-4 nerve root, it was not impinging it. *Id.* Defendant further maintains that an MRI of Plaintiff's lumbar spine performed on February 19, 2010 reported "no focal nerve root impingement or source of radiculopathy identified" and "no evidence for significant subluxation or additional abnormality," but rather only "relatively mild degenerative changes, not uncommon for a patient of this age." *Id.* at 15, *citing* TR 596. Defendant also argues that a 2007 lumbar spine x-ray report disclosed no significant subluxation and a 2008 lower back MRI disclosed "discs to be normal, with no desiccation, no central or lateral recess stenosis." *Id.* at 15-16, *referencing* TR 268, 423. Accordingly, Defendant contends that the imaging evidence refutes Dr. Dozier's conclusions such that the ALJ was justified in not according his opinions controlling weight. *Id.* Defendant also notes that the Commissioner is not required to defer to an unsupported conclusory opinion of disability submitted by a treating physician. *Id.*, *referencing Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed,

longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. . . .

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3] *See, e.g.,* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

10

646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons

must be supported by the evidence and must be sufficiently specific so as to make clear to any

subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the

reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data,

the medical opinions and diagnoses of treating physicians are generally accorded substantial

deference, and if the opinions are uncontradicted, complete deference." *Howard v.

Commissioner*, 276 F.3d 235, 240 (6th Cir. 2002) (*quoting Harris v. Heckler*, 756 F.3d 431, 435

(6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, he is required to articulate

some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The

Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 C.F.R. § 404.1502.

In the case at bar, on March 24, 2010, Dr. Dozier opined that Plaintiff could frequently

lift and/or carry less than 10 pounds; could stand and/or walk for less than 2 hours in an 8-hour

workday; had to periodically alternate sitting and standing to relieve pain or discomfort; could

occasionally balance, but could never climb ramps, stairs, ladders, ropes, and scaffolds or kneel,

crouch, crawl, or stoop; and could perform occasional reaching and handling. TR 409-11. On

April 27, 2011, Dr. Dozier similarly opined that Plaintiff could frequently lift and/or carry less

than 10 pounds; could ambulate only with a medically required hand-held assistive device; had

to periodically alternate sitting and standing to relieve pain or discomfort; could balance

11

occasionally, but could never climb ramps, stairs, ladders, ropes, and scaffolds or kneel, crouch, crawl, or stoop; and could perform occasional reaching.  TR 552-54.[4]

In discussing the evidence of record, the ALJ recounted Plaintiff's medical imaging and results, stating:

> . . . An October 15, 2007 lumbar spine X-ray performed at Athol Memorial Hospital showed subluxation at the L4-5 level.  A December 19, 2007 X-ray of her sacroiliac joint was negative.  A March 3, 2008 magnetic resonance imaging study performed at Athol Memorial Hospital showed a disc bulge at this level touching the L4 nerve root (Ex. 1F).
>
> . . .
>
> . . . On February 19, 2010, magnetic resonance imaging revealed only relatively mild age-appropriate degenerative disc disease, without an identified source of her radicular symptoms, and no evidence of any significant subluxation, conflicting with her past imaging (Ex. 29F).

TR 16-17, *referencing* TR 182, 184-85, 595.

After considering the opinions expressed by Dr. Dozier and the evidence of record, including the medical imaging evidence recounted above, the ALJ declined to give Dr. Dozier's opinion controlling weight, stating:

> . . . I do not give controlling weight to the opinions of Dr. Dozier because they are inconsistent with the claimant's limited course of treatment with no hospital admissions, no surgery, and no significantly abnormal imaging findings.  I agree with his opinion

_____

[4] In his 2011 medical source statement, Dr. Dozier opined that Plaintiff was limited only in the manipulative function of reaching and was unlimited in the functions of handling, fingering, and feeling.  In the next part of that question, however, Dr. Dozier did not check the box for any limitation in reaching, but did check the box indicating that Plaintiff could perform fingering and feeling occasionally.  *See* TR 554.  The undersigned notes the discrepancy in this answer.

12

> that the claimant must use a cane when walking and must be able
> to alternate sitting and standing. . .

TR 18.

As can be seen, the imaging findings recounted above are not fully consistent with Dr. Dozier's opinion that Plaintiff could not even perform a wide range of sedentary work. TR 18. The ALJ, therefore, had sufficient reasons for partially discounting Dr. Dozier's opinion.

Dr. Dozier was Plaintiff's treating physician, a fact that would justify the ALJ's according greater weight to his opinion than to other opinions, as long as that opinion was supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record. As has been noted, however, Dr. Dozier's opinion contradicts other substantial evidence in the record. Contrary to Plaintiff's contention, the Regulations state that the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). Because Dr. Dozier's opinions are contradicted by evidence in the record, the Regulations do not mandate that the ALJ accord Dr. Dozier's opinions controlling weight. Accordingly, Plaintiff's argument fails.

**2.  Residual Functional Capacity**

Plaintiff maintains that the ALJ erred by failing to include a function-by-function assessment in the RFC assessment as required by SSR 96-8p. Docket No. 12-1. Specifically,

13

Plaintiff argues that although the ALJ performed a lengthy RFC in the decision, he failed to address the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* Plaintiff further contends that the ALJ failed to include substantial limitations in the RFC finding correlating to symptoms and limitations that were well-documented in the record. *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's RFC. Docket No. 13. Specifically, Defendant maintains that SSR 96-8p does not require the ALJ to prepare a function-by-function analysis for medical conditions or impairments that the ALJ found to be neither credible nor supported by the record. *Id.*, *referencing Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Defendant further contends that the ALJ did, in fact, discuss Plaintiff's medical condition in detail and specifically referenced, and considered, the function-by-function analyses rendered by Dr. Donald Huffman, Dr. Dozier, and the State agency medical consultants. *Id.* Defendant argues that the ALJ specifically stated that his physical RFC was a combination of different aspects of "each of these conflicting opinions." *Id.* at 13, *referencing* TR 18. Defendant maintains that it is within the ALJ's prerogative to review conflicting medical opinions and to determine an RFC, and that the ALJ's RFC determination is subject to review only for substantial evidence support. *Id.* Defendant further argues that as long as the ALJ has carefully considered the evidence, he is not required to reference and discuss every piece of evidence in his decision. *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical

abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

Additionally, SSR 96-8p provides that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p.

When determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis," the ALJ in the case at bar explicitly discussed the medical and testimonial evidence of record, stating:

> The claimant testified that she suffered a work related injury in October 2007, while assisting a patient. She receives $400.00 every two weeks as worker's compensation benefits. She testified that she is unable to return to her past job. She complaints of pain every day that is of varying intensity. She takes pain medication and a muscle relaxer and uses a TENS unit. She has also received epidural steroid injections. She noted driving 15 or 20 minutes to the YWCA four or five days a week for pool therapy. She reported using a cane when walking. She admitted her asthma is well controlled. She goes to church on Sundays and Bible study on Tuesdays. She admitted being capable of performing light household chores. She lives in a two story home and must climb the stairs standing sideways one stair at a time. The claimant had discussed vocational rehabilitation with her worker's compensation attorney, but said she could not pursue it because of pool therapy and her medications.

Records from Athol Memorial Hospital show that claimant presented to the emergency room at that facility on October 14, 2007, complaining of lower back pain relating to a workplace injury. She was given Vicodin for her lower back pain (Ex. 2F). This injury is confirmed by records from Quabbin Family Practice (Ex. 9F). An October 15, 2007 lumbar spine X-ray performed at Athol Memorial Hospital showed subluxation at the L4-5 level. A December 19, 2007 X-ray of her sacroiliac joint was negative. A March 3, 2008 magnetic resonance imaging study performed at Athol Memorial Hospital showed a disc bulge at this level touching the L4 nerve root (Ex. 1F).

She was seen in the Athol Memorial Hospital emergency room on December 1, 2007. This was due to an asthma exacerbation, rather than her lower back pain (Ex. 4F). However, it is evident that she was in physical therapy until January 29, 2008. This therapy was unsuccessful. She continued to experience lower back pain and leg pain. She had a limp. Physical therapy staff noted she could sit 45 minutes and stand for 30 minutes (Ex. 6F).

Records from Quabbin Family Practice show that her lower back pain was actually improving with chiropractic treatment. She was preparing to return to work with restrictions. However, on March 11, 2008, staff noted her failed physical therapy and referred her for epidural steroidal injections. On April 11, 2008, staff had her on Vicodin but elected to restart chiropractic and aquatic therapy. Her lower back pain was exacerbated by manual labor at home on May 9, 2009. She complained of upper respiratory symptoms on May 29, 2008. Staff noted bronchitis and her asthma, but she was also abusing tobacco (Ex. 9F).

Following her failed physical therapy, staff at Athol Memorial Hospital performed a series of epidural steroidal injections on May 14, May 22, and May 30, 2008 (Exs. 7F; 8F). Records from Quabbin Family Practice show that her radicular symptoms and pain, while apparently still 6/10 in severity, had improved with epidural steroidal injections by June 3, 2008 (Ex. 9F).

Her records are then fairly sparse for the rest of 2008, including just emergency room visits for things other than back pain or asthma (Exs. 10F; 13F). She underwent more epidural steroidal

16

injections on January 19 and February 2, 2009 (Ex. 11F). At the Matthew Walker Comprehensive Clinic, she complained of constant fatigue over the preceding month on March 5, 2009. She reiterated this complained [*sic*] on March 12, 2009 (Ex. 14F).

On June 3, 2009, she had complained of continuing lower back and right hip pain to her chiropractor. She reported having difficulty with all activities of daily living, contrasting with earlier records showing she likely overexerted herself with such activities (Ex. 12F).

On July 9, 2009, a physical therapy care plan was developed at Tennessee Orthopedic Alliance, in response to her chronic lower back pain. She reported that it was hard for her to walk and that she could only sit 15-20 minutes. However, she was better by August 19, 2009, following AccuSPINA decompression therapy. On October 27, 2009, she wanted to return (having completed physical therapy on August 19) because she had significant benefits from the AccuSPINA; apparently she may have been pain-free for a time. Now she was back to using a cane, so staff felt she would benefit from physical therapy twice weekly for six weeks (Ex. 15F).

On November 25, 2009, she was seen at Pain Management of Middle Tennessee for a new patient evaluation. She apparently could only walk 100 yards, sit only 10 minutes, stand only 10 minutes, sleep less than four hours, and could not be out more than one hour. On February 19, 2010, magnetic resonance imaging revealed only relatively mild age-appropriate degenerative disc disease, without an identified source of her radicular symptoms, and no evidence of any significant subluxation, conflicting with her past imaging (Ex. 29F).

On March 31, 2010, she told staff at Pain Management of Middle Tennessee that she was able to walk down the street for the first time in several years, yet she stated she could not work any job due to a need to change positions (Ex. 29F). Meanwhile, she was apparently still performing water therapy, as she became dizzy during it on April 1, 2010, leading to an emergency room visit at Gateway Medical Center. She was also seen at Gateway Medical Center two months later, on June 4, 2010, because of her back

17

pain.  Apparently, her Worker's Compensation provider would no longer approve visits to Pain Management of Middle Tennessee, and she wanted pain medications.  Staff gave her a Toradol injection (Ex. 27F).  Records from the Matthew Walker Comprehensive Clinic show concerns about excessive Lortab use on August 2010 (Ex. 26F).

She returned to Pain Management of Middle Tennessee on July 22, 2010 in moderate distress.  She claimed to have been in severe pain over the past month, such that she could not do her activities of daily living.  She said the Toradol injection had made her better for two weeks.  She was using a TENS unit daily, walked with a cane, and was using electric carts (Ex. 29F).

She returned to Gateway Medical Center on November 19, 2010, also complaining of lower back pain, severe over the past week (Ex. 27F).  She does appear to have still been in pain management (Ex. 29F).  Interestingly, she was seen in the Gateway Medical Center on March 15, 2011, having cut her hand while washing dishes.  This activity is generally inconsistent with the level of back pain she was complaining of at the time.  Further, she was smoking still despite her asthma diagnosis (Ex. 27F).

Records from Pain Management of Middle Tennessee show that she continued to receive services into 2011.  However, an April 27, 2011 note indicates she lives in a multi-level home, which raises questions about her mobility.  She was not having side effects from her medications.  On June 30, 2011, she again reported living in a multi-level home.  She also claimed to perform moderate exercise.  Her pain was down to just 4/10, although she did move around the examination room to stay comfortable (Ex. 29F).

On December 18, 2009, Dr. Jerry Lee Surber, M.D., examined the claimant at the request of the State agency.  She reported using a cane since May 2009.  She exhibited tenderness in her back.  She appeared weaker standing on her left leg.  She walked with a waddling gait.  Dr. Surber did indicate a need for the cane (Ex. 18F).

TR 15-17, *referencing* TR 34-42, 182, 184-85, 191, 204, 213, 220, 222, 224-32, 235-36, 255-56,

18

304, 311, 313, 315, 326, 341, 345, 358-61, 370-71, 376-79.

As can be seen, the ALJ properly considered all of Plaintiff's symptoms and limitations that were documented in the record, and Plaintiff's contention that "the ALJ failed to included substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record" is unavailing.

Also when determining Plaintiff's RFC, the ALJ discussed the opinion evidence of record, stating:

> Several medical sources have offered opinions regarding the claimant's ability to work. Dr. D. Wade Huffman is indentified [*sic*] in the record as the physician who originally referred claimant for physical therapy (Ex. 15F) and for pain management (Ex. 29F). The claimant testified that Dr. Huffman was a prior treating physician. On November 2, 2009, Dr. Huffman wrote: "Chronic low back pain related to work injury 2007. Has had some benefit from LESI but continues to have pain. Will not be able to return to same job as before. Will need vocational retraining but should be able to perform sedentary office or administrative duties." (Ex. 16F).

> On December 18, 2009, a consulting physician completed a form indicating that the claimant could lift or carry up to 10 pounds frequently or up to 20 pounds occasionally; could sit for six to eight hours during a workday; and could stand or walk for one to three hours during a workday (Ex. 18F). The physician went on to indicate a multitude of additional limitations by checking boxes, including a box indicating that the claimant could not walk a block at a reasonable pace on a rough or uneven surface.

> On December 29, 2009 and April 29, 2010, two state agency medical consultants concluded that the claimant could perform light work, except that she could not stand or walk for more than three hours during a workday, and had the postural and environmental limitations indicated in the residual functional capacity above (Exs. 19F and 22F).

19

On March 24, 2010 and again on April 27, 2011, Dr. Damon Dozier, a treating pain management specialist, completed forms describing the claimant's limitations (Exs. 21F and 28F). Both forms indicate that claimant could not even perform a wide range of sedentary work.

TR 18, *referencing* TR 358-71, 373, 380-84, 387-94, 409-13, 552-55.[5]

The ALJ then appropriately considered the inconsistencies between these opinions and accorded each some weight, explaining:

> I have given some weight to each of these conflicting opinions. I do not give controlling weight to the opinions of Dr. Dozier because they are inconsistent with the claimant's limited course of treatment with no hospital admissions, no surgery, and no significantly abnormal imaging findings. I agree with his opinion that the claimant must use a cane when walking and must be able to alternate sitting and standing. I do not give controlling weight to the opinion of Dr. Huffman because the record does not contain his treatment notes. I think that the consulting physician failed to adequately consider the claimant's pain when he found that she could meet the exertional demands of light work. I also reject his unexplained check box statement that the claimant would be unable to walk even one block on a rough or uneven surface. I think the state agency consults failed to adequately consider the claimants [*sic*] pain when they found that she could lift up to 20 pounds occasionally. I agree with their opinions regarding the claimant's postural and environmental limitations and her inability to meet the standing and walking requirements of light work.

TR 18-19.

Ultimately, when determining Plaintiff's RFC, the ALJ combined the findings expressed in the opinions discussed above. TR 15. Specifically, the ALJ stated:

_____

[5] The additional check boxes alluded to by the ALJ in his summary of the consultative examiner and state agency consultant opinions relate to postural and environmental limitations, including sitting, standing walking, lifting, carrying, pushing, and pulling.

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she must use a cane when walking; must be able to alternate sitting and standing every hour; cannot climb ladders or crawl; cannot more than occasionally climb stairs, balance, stoop, kneel, or crouch; cannot work in hazardous environments; and must avoid concentrated exposure to temperature extremes, vibration, and respiratory irritants.

In making this fining, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

TR 15.

The ALJ, after evaluating all of the objective medical evidence of record and Plaintiff's reported level of activity, determined that Plaintiff retained the RFC to perform sedentary work with some limitations. TR 15. The ALJ properly evaluated the evidence when making this RFC determination. Moreover, the ALJ's determination that Plaintiff retained the RFC to perform limited sedentary work is supported by the objective medical evidence and medical opinions regarding her functional limitations. TR 15-18. Because there is substantial evidence in the record to support the ALJ's RFC determination, the ALJ's determination must stand.

**3. Plaintiff's Credibility**

Plaintiff contends that in finding that her subjective complaints were not fully credible, the ALJ did not appropriately address her subjective claims. Docket No. 12-1. Specifically, Plaintiff argues that the ALJ simply made a "conclusory statement" regarding his consideration

21

of Plaintiff's credibility and merely recited the criteria outlined in SSR 96-7p, rather than specifically stating the weight he gave to Plaintiff's statements and the reasons for that weight. *Id.* Plaintiff also contends that the ALJ erred by discrediting her based on the assumption that her "continued receipt of worker's compensation benefits leaves her with little financial incentive to explore new types of employment." *Id.*, *citing* TR 18. Plaintiff further argues that the ALJ erroneously used her failure to participate in vocational rehabilitation, as well as the fact that she has not required any inpatient services or surgeries, to decrease her credibility, because there is no requirement in Title II disability either that a claimant participate in vocational rehabilitation, or that a claimant undergo inpatient services or surgeries. *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's credibility. Docket No. 13. Defendant first argues that Plaintiff's failure to seek vocational training, as recommended by her treating physician, Dr. Donald Huffman, indeed raises a question regarding her motivation to work. *Id.* Defendant also contends that multiple imaging studies of Plaintiff's lower back reveal only minor subluxation, which is inconsistent with her testimony regarding the intensity, duration, and limiting effects of her alleged impairments. *Id.* Defendant specifically notes an October 15, 2007 lumbar spine x-ray report which revealed only a "rather *minor* posterior subluxation of L4 with respect to L5 about 5 mm" (emphasis supplied); a 2008 lower back MRI which revealed "discs to be normal, with no desiccation, no central or lateral recess stenosis"; and a February 19, 2010 lumbar spine MRI which revealed "no focal nerve root impingement or source of radiculopathy identified" and "no evidence for significant subluxation or additional abnormality." *Id.* at 11, *citing* TR 268, 423, 596. Defendant further argues that Plaintiff's testimony regarding the severity of her back pain was inconsistent with the fact that she has

never required any inpatient services or surgery. *Id.*

Defendant additionally contends that Plaintiff was not credible because she testified that the Massachusetts Retirement Board said she was permanently disabled from all her past jobs in Massachusetts, when the Board actually opined that she was not able to perform her most recent employment as a mental retardation aide, but could perform her prior past relevant "light" work as a medical assistant. *Id.* Defendant maintains that the Board also rejected her contention that her alleged workplace accident was the cause of her alleged disability, but rather adopted the opinion of Dr. Ronald Rosenthal that her lumbar strain was related to obesity. *Id.* Finally, Defendant argues that Plaintiff's reported daily activities are "inconsistent with her allegations of an inability to 'walk, stand, or sit for any length of time.'" *Id.* at 12.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

23

ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

As discussed in the statements of error above, the ALJ thoroughly considered the evidence of record, including Plaintiff's testimony, medical records, and medical opinions regarding her functional limitations. TR 15-18. After considering the evidence of record, the ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent

24

they are inconsistent with the above residual functional capacity assessment.

I credit the claimant's testimony that she has not been capable of returning to her past work since her injury; however, I must note that the claimant's earnings record suggests a limited attachment to the work force (Ex. 3D), that the claimant's continued receipt of worker's compensation benefits leaves her with little financial incentive to explore new types of employment, and that her failure to seek vocational rehabilitation services raises a question regarding her motivation to work. I also note that the claimant's testimony regarding the severity of her pain was inconsistent with her fairly limited treatment history. For example, she has never required any inpatient services or surgery. I do not credit her testimony to the extent that it was inconsistent with her ability to perform the limited range of sedentary work described above.

TR 17-18. As can be seen, the ALJ did not merely recite the criteria outlined in SSR 96-7p or make a "conclusory statement" about Plaintiff's credibility; rather, the ALJ explained why he discounted Plaintiff's credibility. *Id.* The ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered.. *Id.*

With regard to Plaintiff's contention that the ALJ improperly discounted her credibility because she had "little financial incentive to explore new types of employment" and because she failed to seek recommended vocational rehabilitation services, this argument is unavailing. In *Mullen v. Bowen*, 800 F.2d 535, 547 (6th Cir. 1986), the Sixth Circuit held that the Appeals Council could reject a claimant's testimony of disabling pain where the claimant had little financial motivation to work, received little medical care, and had no objective evidence confirming the severity of pain. As discussed above, in the case at bar, Plaintiff received biweekly worker's compensation benefits, never required inpatient services or surgery, and had

25

multiple imaging studies that disclosed only mild abnormalities.  TR 15-18.  The ALJ could properly consider these facts and find Plaintiff's claims of disabling pain to be less than fully credible.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination.  *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).  An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility.  *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)).  Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence.  *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)).  If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was inconsistent with the medical evidence of record.  TR 17.  It is clear from the ALJ's articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations.  This is within the ALJ's province.

26

The ALJ observed Plaintiff during her hearing, assessed the medical and testimonial evidence, reached a reasoned decision, and articulated the basis for that decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge

27